No. 2--01--0873

 IN THE

 APPELLATE COURT OF ILLINOIS

 SECOND DISTRICT

In re Tinya W., Minor ) Appeal from the Circuit Court
 ) of Kane County.
 )
 ) No. 99--JA--31
(The People of the State of )
Illinois, Petitioner-Appellee, ) Honorable
v. Quinella W., Respondent- ) Judith M. Brawka,
Appellant). ) Judge, Presiding.

 JUSTICE GEIGER delivered the opinion of the court:
 The respondent, Quinella W., appeals from the May 17, 2001, order of
the circuit court of Kane County terminating his parental rights to his
minor child, Tinya W. On appeal, the respondent contends that the State
failed to prove his unfitness by clear and convincing evidence. We affirm.
 On April 28, 1999, the State filed a petition alleging that Tinya W.
was a neglected minor. As the respondent's location was not known at this
time, he was served notice of the petition by publication. The respondent
did not appear at the adjudicatory hearing. After hearing the State's
evidence, the trial court adjudicated Tinya W. a neglected minor.
 On July 26, 2000, the State filed a petition seeking to terminate the
respondent's parental rights to Tinya W. The petition alleged that the
respondent was unfit for the following reasons: (1) he abandoned Tinya W.
(750 ILCS 50/1(D)(a) (West 2000)); (2) he failed to maintain a reasonable
degree of interest, concern, or responsibility as to Tinya W.'s welfare
(750 ILCS 50/1(D)(b) (West 2000)); (3) he deserted Tinya W. for more than
the three months preceding the commencement of the adoption proceeding (750
ILCS 50/1(D)(c) (West 2000)); (4) he failed to make reasonable progress
towards Tinya W.'s return within the nine months following the adjudication
of neglect (750 ILCS 50/1(D)(m) (West 2000)); and (5) he manifested an
intent to forego his parental rights by failing to visit Tinya W. or to
communicate with his caseworker (750 ILCS 50/1(D)(n) (West 2000)).
 The trial court conducted a hearing on the State's petition on May
17, 2001. At the hearing, Carrie Mackowiak was the only witness to
testify. Mackowiak testified that she was the Catholic Charities
caseworker who had been assigned to the case in April 1999. At this time,
Tinya W. was residing with the maternal grandmother. The respondent's
whereabouts were unknown. Mackowiak prepared a client service plan on May
14, 1999. The only task set for the respondent was that he cooperate in
being assessed for services once he was located.
 Mackowiak rated the respondent's compliance with the service plan
between April 1999 and July 2000 as unsatisfactory. Mackowiak testified
that she conducted four diligent searches for the respondent during this
time and that he could not be located. As part of her searches, Mackowiak
examined the Putative Father Registry but found no match for the
respondent's name.
 While conducting a fifth search for the respondent in August 2000,
Mackowiak located the respondent after screening the public aid rolls.
After Mackowiak contacted respondent by letter, the respondent telephoned
Mackowiak sometime near the end of August 2000. Mackowiak did not testify
as to the substance of this conversation. After this conversation, there
was no further communication between the respondent and Mackowiak.
 The record reveals that the respondent did appear before the trial
court on September 11, 2000, during a status hearing. At this hearing, the
respondent agreed to undergo paternity tests. The respondent again
appeared before the trial court on October 31, 2000, at which time the
trial court was advised that the paternity tests had revealed that the
respondent was Tinya W.'s father. The trial court then appointed the
public defender to represent the respondent at the proceedings. The
respondent never again appeared in court and was not present at the hearing
on the State's petition for the termination of parental rights.
 Following the close of evidence, counsel for the respondent argued
that the respondent could not be found unfit because he was never told by
Tinya W.'s mother that he was the father of the child. Counsel argued that
it was impossible for the respondent to abandon a child who he did not know
existed. For this same reason, counsel argued that it would be
unreasonable to expect the respondent to show concern, interest, or
responsibility for Tinya W.'s welfare.
 The trial court rejected these arguments and found that the State had
proved the respondent's unfitness by clear and convincing evidence. The
trial court found that the respondent should have known of the possibility
of the minor's conception as a result of his act of sexual intercourse.
The trial court also found that the respondent was responsible for the
consequences of his act of sexual intercourse and was under an obligation
to care, support, and nurture the child. The trial court concluded that
the defendant had not taken any steps to meet his obligations between the
time of the adjudication of neglect and the filing of the State's
termination petition. The trial court therefore concluded that the State
had proved the allegations contained in its petition.
 In making its ruling, the trial court also noted that the respondent
had failed to register his name with the Putative Father Registry
maintained by the Department of Children and Family Services (750 ILCS
50/12.1 (West 2000)). The trial court commented:

"I believe that as a result of the act of sexual intercourse, that one must
know or should know of the possibility of the conception of a child. And
so, as the statute is structured, and as the putative father registry
states, it is the obligation of the individual father in Illinois to
register; and the reason that is done is so that in the future, if we need
to try to contact them concerning their child, that we *** can make that
contact. And in this particular instance, the fact that [the respondent]
did not follow through on the consequences of his act of sexual intercourse
with the mother does not alleviate him of his parental responsibilities to
follow through, care for and support and nurture the child."

Following a best interests hearing, the trial court found that it was in
Tinya W.'s best interest to terminate the respondent's parental rights.
This court subsequently granted the respondent leave to file a late notice
of appeal.
 The respondent's sole argument on appeal is that the trial court
erred in terminating his parental rights. The respondent argues that the
trial court erred in invoking the provisions of the Putative Father
Registry contained in section 12.1 of the Adoption Act (750 ILCS 50/12.1
(West 2000)) to terminate his parental rights. The respondent argues that
section 12.1 pertains only to the notification requirements in adoption
proceedings and has no application in a proceeding to terminate parental
rights brought under the Juvenile Court Act of 1987 (705 ILCS 405/1--1 et
seq. (West 2000)). Additionally, the respondent argues that his
constitutional rights were violated when the trial court terminated his
parental rights based upon conduct that occurred before the respondent was
made aware of his paternity.
 Parental rights and responsibilities, despite their societal and
personal importance, may be terminated when a parent is adjudicated unfit
pursuant to the statute. In re A.S.B., 293 Ill. App. 3d 836, 843 (1997).
However, because each case involving parental fitness is sui generis,
courts generally do not make factual comparisons to other cases. A.S.B.,
293 Ill. App. 3d at 843. To effectuate the termination of parental rights,
the State need prove only one statutory fact of unfitness by clear and
convincing evidence. A.S.B., 293 Ill. App. 3d at 843. In other words, a
reviewing court need not consider other findings of unfitness when there is
sufficient evidence to satisfy any one statutory ground. A.S.B., 293 Ill.
App. 3d at 843. A finding of parental unfitness is entitled to great
deference on review and will not be disturbed unless it is against the
manifest weight of the evidence. A.S.B., 293 Ill. App. 3d at 843.
 We agree with the respondent that it was improper for the trial court
to consider the respondent's failure to register his name with the Putative
Father Registry in making its fitness determination. The registry was
created by the provisions of the Adoption Act, and its purpose is to assist
in the identification and location of a putative father of a minor child
who is, or who is expected to be, the subject of an adoption proceeding, in
order "to provide notice of such proceeding to the putative father." 750
ILCS 50/12.1 (West 2000). By failing to register within 30 days after a
child's birth, a putative father is subsequently barred from bringing or
maintaining any action to assert any interest in the child. 750 ILCS
50/12.1(g) (West 2000). The registry was created by the legislature in
order to bring finality to adoption proceedings and to preclude a putative
father from later challenging the legality of an adoption because he had no
knowledge of the proceeding. See In re Petition to Adopt O.J.M., 293 Ill.
App. 3d 49, 67 (1997).
 The instant case was not initiated under the Adoption Act, but was
instead brought as a neglect proceeding pursuant to the provisions of the
Juvenile Court Act of 1987 (705 ILCS 405/1--1 et seq. (West 2000)). The
respondent's identity was known from the onset of the proceeding, and the
State subsequently filed a petition to terminate his parental rights.
Therefore, the question before the trial court was not whether the
respondent had any rights in an adoption proceeding but, instead, whether
the respondent was an unfit parent and whether his parental rights should
be terminated. See 705 ILCS 405/2--29 (West 2000). The specific grounds
upon which a parent may be found unfit are provided by statute. See 750
ILCS 50/1(D) (West 2000). A putative father's failure to register his name
with the Putative Father Registry is not a statutory ground upon which the
father may be found unfit. Accordingly, we believe that the trial court
erred in considering this factor in rendering its fitness determination.
 However, despite this error, we nonetheless believe that the evidence
presented at the hearing supported the trial court's finding of unfitness.
Here, the respondent has had no contact whatsoever with Tinya W. from the
date of her birth. Nor was any evidence introduced demonstrating that the
respondent provided any financial support or otherwise expressed any
interest in her welfare. Such evidence certainly supports the trial
court's findings that the respondent abandoned Tinya W. and failed to
demonstrate a reasonable degree of interest, concern, or responsibility for
her welfare.
 The respondent asserts that it was improper for the trial court to
consider his conduct prior to the time that he was contacted by Mackowiac,
as he was not aware of his paternity during this time. Initially, we note
that the respondent did not appear at the hearing and did not introduce any
evidence demonstrating that he was unaware of his paternity. However, even
assuming that the respondent was unaware of his paternity, the case law
does not support his argument. For example, in In re A.S.B., 293 Ill. App.

3d 836, 844 (1997), a putative father argued that it was improper for the
trial court to terminate his parental rights because the natural mother had
misrepresented to him that he was not the father of the child. The father
argued that he had been "thwarted" from demonstrating any interest,
concern, or responsibility for his child because he was not aware of the
child's existence. A.S.B., 293 Ill. App. 3d at 844. The court rejected
this argument, holding that the law imposed an unequivocal and substantial
burden upon parents to demonstrate a reasonable degree of interest,
concern, or responsibility for their children. A.S.B., 293 Ill. App. 3d at
844. The court explained that what a putative father believes in his own
mind is relevant only if he makes some effort to show interest or concern
for the child. A.S.B., 293 Ill. App. 3d at 844; see also In re Adoption of
A.S.V., 268 Ill. App. 3d 549, 558 (1994); In re Adoption of J.R.G., 247
Ill. App. 3d 104, 110 (1993).
 In this case, there is no evidence that the respondent ever made any
effort to show any degree of interest, concern, or responsibility for Tinya
W.'s welfare. Indeed, there is no evidence appearing in the record
indicating that the respondent took any interest in Tinya W. even after he
purportedly first learned of her existence. As already noted, the
respondent was not present at the hearing on the State's petition to
terminate his parental rights. In the absence of any effort on the
respondent's part, we cannot conclude that he has evinced a reasonable
degree of interest in Tinya W. See A.S.B., 293 Ill. App. 3d at 844. As
the evidence supported at least one of the grounds of unfitness alleged by
the State, we hold that the juvenile court did not err in terminating the
respondent's parental rights.
 Finally, the respondent briefly maintains that his constitutional
right to due process was violated when the trial court's fitness
determination was predicated upon conduct that occurred before he was
provided any services to correct his parental shortcomings. However, the
respondent has insufficiently articulated his argument to facilitate our
review of this issue in violation of Supreme Court Rule 341(e)(7) (188 Ill.
2d R. 341(e)(7)). Although the respondent cites to Santosky v. Kramer, 455
U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982) and various provisions
of the Juvenile Court Act, he does not explain how these authorities
establish a constitutional violation in the instant case. We are therefore
unable to respond to this argument and find that it has been waived. See
Vernon Hills III Limited Partnership v. St. Paul Fire & Marine Insurance
Co., 287 Ill. App. 3d 303, 311 (1997).
 For the foregoing reasons, the judgment of the circuit court of Kane
County is affirmed.
 Affirmed.
 McLAREN and BYRNE, JJ., concur.